THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY E. JENKINS, Defendant-Appellant.

Second District   No. 82—75

Opinion filed August 10, 1983.

James D. Sparkman, of Vella & Reedy, P.C., of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Terry E. Jenkins, was convicted of the murder of Naunette Bartleson, following a jury trial, and sentenced to 20 years'

imprisonment. The issues raised for review are whether the defendant was proved guilty beyond a reasonable doubt, whether the jury was properly instructed concerning circumstantial evidence, and whether the prosecutor's conduct deprived the defendant of a fair trial.

The defendant was charged with beating and killing Naunette Bartleson without lawful justification knowing that his acts in beating her created the strong probability of death or great bodily harm to her, in violation of section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(2)). He was tried before a jury, and the following evidence was adduced.

According to the defendant, he and Sandra Bartleson and her 16-month-old daughter, Naunette, had moved into their home a few days before the injury occurred. On January 27, 1981, the defendant got off work at 3 p.m. and went home. Sandra left for work at 4 p.m. Naunette, who had been asleep when the defendant came home, awoke at 5 p.m. The defendant fed and bathed her, did some laundry, and called his sister to pick up the clothes to dry at her house. Between 7 and 7:30 p.m., he was playing with Naunette and chased her into the living room, where she fell on the floor and hit her face. He noticed a bruise under her right eye, which started swelling, and placed an ice pack on it. At about 8 o'clock his sister arrived. She picked up Naunette and noticed the bruise. Naunette seemed normal at the time. The defendant's sister left at about 8:30. The defendant called Sandra at work to have her pick up the laundry at his sister's house. At 10:15, Sandra called from his sister's and spoke to him and Naunette. The defendant then gave Naunette a bottle of juice and told her to go into the living room. He remained in the kitchen. About five minutes later, he heard a loud thud coming from the living room and ran into the room. Naunette was on the floor, three or four feet from the television set. He picked her up and she was crying. She turned white and went limp, and the defendant ran to the bathroom with her and splashed water on her face to revive her. The water knocked her bangs back, revealing a bruise on her forehead. At about that time, Sandra walked in and asked what had happened. The defendant told her that Naunette had fallen and he thought she had knocked the breath out of herself. Naunette's eyes were fluttering, and the defendant slapped her face very slightly to revive her. When he got no response, he slapped her on the back, but not very forcefully. As Sandra arrived, Naunette was gasping for breath. She appeared to have stopped breathing, and the defendant ran into the living room, laid her on the floor, elevated her feet, and gave her mouth-to-mouth resuscitation for 10 to 15 minutes. As he was moving

to the living room, he told Sandra to call an ambulance.

The fire department received Sandra's call at 10:41 p.m. Paramedics arrived at the defendant's residence a few minutes later and observed Naunette unconscious on the floor. They noticed a bruise on the front portion of her head and on her right cheek. She was breathing, her pupils were fully dilated, and she was not responsive to painful stimuli. They asked the defendant what had happened, and he said that Naunette was running into the living room and fell. When the paramedic asked how far she had fallen and whether she had fallen off a couch or chair, the defendant responded that she had run into the living room and fallen. When another fireman questioned the defendant about what had happened, the defendant replied that Naunette was running across the floor and fell and added, "As a matter of fact, she fell twice." Either the defendant or Sandra said that Naunette had been in her current condition for about 20 minutes. There were no signs of violence in the house or to the body of the defendant. The room was photographed with a tape measure held in front of the furniture, and the height from the floor to the seats and arms of the furniture ranged from 15½ to 22 inches.

Naunette was taken to the hospital emergency room, where a doctor who examined her observed a bruise on the right side of her face and three or four bruises on her forehead that were not distinct. She was unconscious and appeared to have intercranial bleeding. In a brief conversation, the defendant told the doctor that Naunette had run across the uncarpeted floor and fallen, that she had bumped her head, that after about five minutes she had lapsed into unconsciousness, and that he had tried to revive her. The doctor testified that he was unable to judge the age of the bruises, and he did not recall having estimated their age to a police officer. A police officer testified that the doctor had said the bruises on the forehead and right cheek were at least a day old and were definitely not fresh and that other bruises on the abdomen were older.

The defendant was interviewed by detectives at the hospital at about 12:30 a.m. on the night of the incident, after being advised of his rights. He related the events of the evening, including the first fall when Naunette was running across the floor and the thud he later heard before he found her lying on the floor. The defendant accompanied the detectives to the police station and repeated the same facts, adding more details, such as the phone call to his sister and the position of Naunette near the television set. He said he had drunk four or five beers during the course of the evening. He consented to having his house searched by the police, and he furnished a written state-

ment to the police.

The defendant's sister's testimony affirmed her visit to the defendant's house on the evening of the incident. She noticed nothing unusual about the defendant or Naunette that evening, but she did see the bruise on Naunette's right cheek. She offered to take Naunette home with her and have Sandra bring her back when she picked up the laundry, but the defendant said he would keep her.

Sandra's testimony agreed with that of the defendant for the most part. She added that Naunette had whimpered and called "Mommy" when she spoke to her on the phone but that that was not unusual when she was away from the child. She testified that when she arrived home, found the defendant holding Naunette and sprinkling water on her face, and asked what had happened, he told her he thought Naunette had fallen and knocked her breath out. When Naunette's eyelids began to twitch, the defendant said he thought she would be all right and Sandra thought so too. It was after the defendant carried Naunette into the living room and she stopped breathing and the mouth-to-mouth resuscitation was begun that Sandra called the ambulance, but she was uncertain whose idea it was. She denied that the defendant had told her not to call an ambulance. One of the detectives testified that on the night of the incident Sandra had said that, when she arrived home and the defendant told her that Naunette was unconscious and she went to call an ambulance, the defendant told her not to because the child would be all right and that she called the ambulance when the child stopped breathing. The detective also testified that on the morning after the incident Sandra had stated that, when she arrived home and asked what was wrong with Naunette, the defendant had answered that Naunette had held her breath until she passed out, and when she asked if Naunette was unconscious the defendant replied that she was all right. Sandra repeated those statements during a conversation in August 1981.

There was also testimony by the child's babysitter, who cared for Naunette on the morning of the incident, that she observed no marks or bruises while changing Naunette's diapers and clothes and washing her face and forehead. Other witnesses testified that five days before the incident Naunette had run into a kitchen table and hit her forehead and that two days before the incident Naunette had fallen onto the floor and struck the right side of her forehead.

Naunette died on February 2, 1981. Two pathologists testified that they had performed autopsies. They observed bruises on her face, chest, groin, and thigh, as well as a surgical incision closed with sutures on the right side of her skull, 8½ inches long. There was an ex-

tensive fracture on the back of her head extending from the point where the spinal cord joins the brain toward the top of the head, as well as extensive bleeding under the skull, which produced swelling. The surgical incision had been performed to relieve pressure on the brain. There was no bruising to the skin on the stomach, but there was blood in the abdominal cavity at the right side of the abdomen, indicating that Naunette had received a rapidly applied, penetrating, blunt impact. The blow appeared to have come from the front. Such abdominal damage rarely occurs as a result of resuscitation efforts; if it were caused by a hand, it would have been equivalent to some form of punch. The cause of death was severe brain injury with compression of the brain stem. The hemorrhage in the brain stem was caused by a single skull fracture, due to a severe blow to the back of the head, and it was consistent with contact by a flat or very blunt surface. The head injury would have caused unconsciousness within a few minutes and within no longer than 30 minutes after receiving the fracture. The skull injury could not have been caused by a child of Naunette's size running across a wooden floor and falling.

The jury found the defendant guilty of murder. He was sentenced to 20 years' imprisonment.

■■ ■ The first issue raised is whether the defendant was proved guilty beyond a reasonable doubt. The defendant argues that the evidence presented failed to prove the facts alleged by the State in the information—*i.e.*, "that he beat and killed Naunette Bartleson without lawful justification, knowing that his acts in beating Naunette Bartleson created the strong probability of death or great bodily harm to Naunette Bartleson." The defendant posits that the medical testimony in no way contradicted his account of what happened, since he never professed to know what the child was doing at the time of the second fall. He asserts that his conversations with the authorities, which initially focused on the child's fall while running and did not more fully recount the incident until later, were quite natural since that fall was the only one he witnessed, and he notes that he mentioned the second fall when first questioned. The defendant concludes that there was no evidence proving a physical act committed by him, and there was none indicating whether the alleged act was knowing or reckless. In addition, the defendant argues that all proof of guilt was circumstantial, that the State therefore had the burden of excluding every reasonable theory of innocence, and that the State did not meet that burden. He acknowledges that there was direct evidence of certain facts adduced at the trial but contends that it was not direct evidence of guilt. He notes that there was no medical testimony regarding the

possibility that the child fell from a piece of furniture or establishing when the stomach injuries occurred. The State responds that there was sufficient evidence to dispel any reasonable doubt of guilt, that the evidence was not entirely circumstantial and the defendant's proposed standard is incorrect, and that even if there were no direct evidence the State met its burden at trial.

We find that the State did meet its burden of proving the defendant guilty beyond a reasonable doubt, even assuming that the conviction was based on circumstantial evidence. A conviction may be based upon circumstantial evidence, and the manner of death and the means by which it was inflicted may be inferred from the circumstances proved. (*People v. Huff* (1963), 29 Ill. 2d 315, 320.) When the evidence finding a defendant guilty is entirely circumstantial, the facts proved must be consistent with the defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Evans* (1981), 87 Ill. 2d 77, 83.) The guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 78.) However, proof beyond a reasonable doubt does not mean that the State is required to establish guilt beyond the possibility of a doubt. (*People v. Garcia* (1981), 95 Ill. App. 3d 792, 797.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied on to establish guilt so long as all the evidence taken together satisfies the jury beyond a reasonable doubt of the accused's guilt, nor must the jury search for a series of possible explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Holsapple* (1975), 30 Ill. App. 3d 976, 978.

■ Presence at the scene of an offense is insufficient, without more, to establish guilt beyond a reasonable doubt; and opportunity alone is not adequate to sustain a conviction unless the prosecution can show that no one else had the opportunity to commit the offense. (*People v. Howard* (1979), 74 Ill. App. 3d 870, 877.) Here, there was sufficient evidence that the defendant and no one else was with Naunette at the time the fatal injury occurred, given the testimony as to when the defendant was alone with her and the medical testimony that Naunette would have lost consciousness within a few minutes after the injury occurred. The question that remains is whether the defendant's explanation was plausible.

The jury has a duty to resolve all facts and circumstances on a theory of innocence if that may be reasonably done. (*People v. Smith* (1979), 76 Ill. App. 3d 191, 196.) To prove guilt beyond a reasonable doubt, the jury need not disregard the inferences that flow normally

from the evidence. (*People v. Minish* (1974), 19 Ill. App. 3d 603, 606.) To warrant a conviction of a crime on circumstantial evidence, the proof must be of a conclusive nature and tendency, leading on a whole to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. *People v. Donahue* (1977), 50 Ill. App. 3d 392, 393.

■ Here, the defendant testified that he did not know how Naunette was injured; he simply heard a thud and found her lying on the floor. There was no medical opinion elicited as to whether Naunette's fatal injury could have occurred from a fall from a piece of furniture to the floor, but there was testimony that the injury to the back of her head was consistent with contact with a flat or very blunt surface. Without more, this supports a reasonable theory of innocence. However, Naunette also sustained an abdominal injury that medical testimony indicated was inflicted from a rapidly applied, penetrating, blunt impact from the front, which could have been a punch. The injury was not discovered until the autopsy was performed, and there was no specific proof that the injury to the abdomen occurred during the time Naunette was with the defendant. Nor was there any testimony regarding whether the injury would have manifested any symptoms detectible by those observing Naunette. However, several witnesses observed that Naunette appeared normal on the day and evening in question until the time of her head injury. The jury quite reasonably could have inferred that so severe an abdominal injury would have caused visible discomfort had it occurred earlier and that, since none was observed, the injury must have occurred near the time that the head injury occurred. In that case, the theory that Naunette was injured from a fall (the "thud") would be less credible since the head injury was from contact with a flat surface from the back and the abdominal injury was from a penetrating blow to the front. Moreover, there were certain inconsistencies in the testimony that the jury could have resolved against the defendant, such as his alleged initial explanation to Sandra that Naunette had held her breath until she passed out, the conflict as to whether he hesitated to call an ambulance, and his failure early on to more thoroughly explain to the emergency personnel and doctors treating the child that there was a second fall that he did not observe. Given the jury's first-hand opportunity to assess the credibility of the witnesses and the cumulative inferences that may be drawn from the evidence presented, we will not disturb its verdict.

■ The second issue is whether the jury was properly instructed concerning circumstantial evidence. Illinois Pattern Jury Instruction

(IPI), Criminal, No. 3.02 (1968), which was tendered by the defendant, states in full:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> [You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence.]"

Only the first paragraph was given to the jury, over the defendant's objection.

In support of his contention of error regarding this instruction, the defendant reiterates his position that, while there was indeed direct evidence presented by the State, it was only circumstantial evidence of guilt and there was no direct evidence of guilt. Therefore, the defendant believes, it was reversible error for the court to refuse the second paragraph of the instruction, since his defense was that Naunette died as the result of an accidental fall and the instruction could easily have affected the jury's decision. The State responds that the jury instruction issue was waived by the defendant in that the language in his post-trial motion challenging the exclusion of jury instructions was too general. The State argues that, even if the issue was not waived, the remainder of the instruction was not warranted since there was direct evidence and that, in any event, there was no reversible error since the jury was properly instructed as to the presumption of innocence and the State's burden of proof.

The defendant's post-trial motion raised as error, *inter alia*, "[t]hat the Court erred in giving instructions submitted by the State over the defendant's objections." As the defendant notes, the only jury instructions tendered by the defendant that were refused were the circumstantial evidence instructions and one other group of instructions, and the instructions regarding circumstantial evidence were specifically argued during the hearing on the post-trial motion. Since the court and the State were apprised of which jury instructions were put into issue by the post-trial motion, the issue was adequately preserved for review in this court and will be considered.

Circumstantial evidence is the proof of facts or circumstances that gives rise to a reasonable inference of other facts that tend to establish the guilt or innocence of a defendant. (*People v. Evans* (1981), 87 Ill. 2d 77, 83.) Direct evidence is proof of the existence of a fact in

issue without inference or presumption; circumstantial evidence is indirect proof of the principal facts that can be inferred only from one or more circumstances directly established. (*People v. Garcia* (1981), 95 Ill. App. 3d 792, 796-97.) It is well settled that paragraph two of the circumstantial evidence instruction should be given when the proof of guilt, as to each element of the offense, is circumstantial and only when the evidence is entirely circumstantial. *People v. Evans* (1981), 87 Ill. 2d 77, 83; *People v. Flowers* (1982), 111 Ill. App. 3d 348, 357.

■ The State cites as direct evidence the medical testimony that Naunette's head injury could not have been sustained in a fall, the defendant's testimony that she fell while running, and testimony that the defendant was the only person with Naunette. Refusal to give the second paragraph of IPI Criminal No. 3.02 has been justified where admissions made by the defendant were viewed as direct evidence (*People v. Fletcher* (1976), 40 Ill. App. 3d 537, 542) and where the testimony establishing that the crime occurred was deemed sufficient direct evidence even though the evidence linking the defendant to the crime was entirely circumstantial (*People v. Christiansen* (1969), 118 Ill. App. 2d 51, 57). It has also been held, where the defendant offered explanations of how incidents occurred, that any statements made by the defendant be considered direct evidence. (*People v. Spataro* (1978), 67 Ill. App. 3d 69, 75; *People v. Triplett* (1980), 87 Ill. App. 3d 763, 770.) Here, there was direct evidence—testimony from the defendant himself—that the defendant and no one else was alone with Naunette immediately before she lost consciousness, and there was medical testimony that the loss of consciousness would have occurred within minutes of the fatal head injury. In addition, although the defendant maintained that he did not know exactly how the child was injured, he did by suggestion attribute the cause of her injury to the "thud" he heard, and he offered an explanation of innocence in that he was in the other room at the time. We hold that there was sufficient direct evidence to warrant the trial court's refusal to give the second paragraph of the instruction.

■ We further note that, even had the full instruction been proper, there would be no basis for reversal. Failure to give the full instruction does not require reversal unless it appears that justice was denied or that the verdict resulted from such error, and courts of review are reluctant to find reversible error in the trial court's failure to give that portion of the instruction. (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 720-21.) Moreover, there is authority that the language of the paragraph is essentially a restatement that defend-

ants must be proved guilty beyond a reasonable doubt. (*People v. Cross* (1981), 100 Ill. App. 3d 83, 90.) Thus, if the jury is instructed that the State has the burden of proving the defendant guilty beyond a reasonable doubt, there is no reversible error. (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 721-22.) Here, the jury was so instructed. Additionally, failure to give the instruction has not been considered to be a denial of justice or a factor that would have influenced the jury in numerous cases where no reasonable theory of innocence was indicated by the record (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 722; *People v. Garcia* (1981), 95 Ill. App. 3d 792, 799; *People v. Stokes* (1981), 95 Ill. App. 3d 62, 67, 69; *People v. Merkel* (1974), 23 Ill. App. 3d 298, 302-03); however, where the record has reflected a reasonable theory of innocence, reversal has been warranted (*People v. Evans* (1981), 87 Ill. 2d 77, 83). In the present case, we have determined that the totality of the evidence reflects no reasonable theory of innocence that would lead us to conclude that the jury's verdict resulted from the omission of paragraph two. Therefore, under no theory is the failure to include paragraph two reversible error here.

▪ The last issue is whether the prosecutor's conduct deprived the defendant of a fair trial. The defendant presents two different bases of alleged error in the conduct of the prosecutor during closing argument. The first concerns the prosecutor's statements and physical demonstrations of his theory of how Naunette's injuries were incurred. However, as the State points out, no objection was raised during these remarks. Failure to object at trial to portions of the argument now being complained of constituted waiver. *People v. Edwards* (1973), 55 Ill. 2d 25, 35, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.

The second set of comments urged as prejudicial error, found in three transcript passages, concerns the prosecutor's repeatedly stating to the jury that the defendant had said to Sandra, "Don't call the ambulance." The defendant objected to these remarks on the basis that the prosecutor was misstating the evidence as to whether Sandra testified that the defendant told her not to call the ambulance. The objections were sustained, and the court reminded the jury that it had heard the evidence and should remember what was said, that witnesses' testimony could be impeached by prior inconsistent statements, and that the jury was the judge of the testimony. As the State notes, the act of promptly sustaining an objection to improper comments by a prosecutor and instructing the jury is usually viewed as sufficient to cure any prejudice. (*People v. Baptist* (1979), 76 Ill. 2d 19, 30.) In any event, we perceive no prejudice in these remarks. The

prosecutor's comments, while not an exact statement of the testimony, were simply argumentative, and there was an adequate basis in the evidence for the jury to return a guilty verdict even without believing that the defendant was opposed to calling an ambulance.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.