THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN GARNER LOVELACE, Defendant-Appellant.

Second District   No. 2—89—0939

Opinion filed October 23, 1991.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant appeals from his conviction in the circuit court of Lake County, of the offense of murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)).

In October 1988 defendant was charged by indictment with the 1983 murder of Eugene "Bo" Green. Count I of the indictment alleged murder during the commission of armed robbery, a felony, in violation of section 9—1(a)(3) of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(3)). Count II alleged that defendant shot Green in the head, knowing that such act would cause Green's death, in violation of section 9—1(a)(1) of the Criminal Code (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)). A jury acquitted defendant of the felony murder count, but convicted him of the murder count. Defendant was sentenced to a 40-year term of imprisonment.

On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt. Where, as here, the evidence against the defendant is purely circumstantial, the standard of review is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *People v. Berry* (1990), 198 Ill. App. 3d 24, 28.

The body of Eugene Green was found stuffed into a storage trunk in a heavily wooded lot in Waukegan on February 16, 1983. An autopsy did not disclose how long the body had been dead; however, the cause of death was attributed to gunshot wounds to the head from a .38 caliber gun. No one was charged with the murder until October 1988 when a grand jury returned the two-count indictment against defendant.

At trial, Gary Kaya testified that he and "Bo" Green were involved in negotiating a drug deal with defendant in January 1983. Kaya and Green had been to defendant's house on January 8 and agreed to sell approximately 41 grams of heroin to defendant for $40,000. Green returned to defendant's house on the afternoon of

January 10 and again later that night to consummate the deal. Green allegedly had the heroin hidden in one of his boots, along with a .38 caliber pistol. When Kaya called defendant's house that night, defendant told him that Green had left. According to Kaya, defendant told him that Green walked down the street and got into a car; defendant then told him that Green had first called Robin Casselberry and then gotten into a car. Kaya never saw Green again. Kaya also believed that he recognized the trunk in which Green was found as a trunk he had seen in defendant's house on January 8; however, he was not 100% certain that it was the same trunk.

Ronald Green, Eugene's brother, testified that he and a companion went to defendant's house at approximately 10:30 p.m. on January 10 to find his brother. Defendant told Ronald that Green had left with a girl in a red car. Defendant also told Ronald that Green "got what he was supposed to get, [that] he gave Bo what he needed and [that] Bo had gone." Ronald identified the trunk in which Green was found as the trunk he saw in defendant's garage on January 10, although he could not say for sure that it was the same trunk, as the trunk in court was dirtier, rustier, and older than he remembered. Ronald also admitted that, when he spoke to police in 1983, he never told them anything about seeing a trunk in the garage.

Robin Casselberry testified that she drove Green to defendant's house on the afternoon of January 10 in a red Plymouth or Dodge automobile. Casselberry stated that she waited in the car while Green entered the residence. During this time, she could see into defendant's garage, and she did not see a trunk in the garage. She also stated that another red car driven by a white male was circling the block while she was parked in the driveway of defendant's house.

Mary Carter testified that in February 1983 she saw a picture in the newspaper of the trunk in which Green's body was found. Carter stated that this reminded her of an incident which occurred late in January 1983, when she saw three men looking at a similar trunk in a Salvation Army store in Waukegan. One of the men was an older, well-dressed man wearing a hat; Carter identified defendant in court as the older man. Carter did not know defendant in 1983. She also stated that she did not know if the men purchased the trunk. On cross-examination, Carter admitted that she did not pay much attention to the men at the time. In addition, she did not talk to the police about the incident until October 1988. At that time, she picked defendant's photograph from a photographic array in which the only picture of an older black man was that of defendant. Furthermore,

the older man in the store was wearing a hat, and she could not see his hair; in his picture, defendant wore no hat.

Several police officers testified as to conversations they had with defendant both before and after his arrest. All the accounts the defendant gave of Green's visit on the night of January 10 were substantially the same; however, the accounts varied as to exactly how Green left defendant's home that night. The accounts ranged from Green walking away alone to Green getting into a large dark-colored car which backed down the street. The accounts also contained discrepancies as to whether defendant declined or accepted Green's invitation to involve himself in the deal. Only one officer testified as to the existence of a trunk. Officer Shipley of the Waukegan police department testified that defendant told him, when asked, that he had a trunk with a lamp on it in the living room of his house. However, defendant denied purchasing the trunk from the Salvation Army.

Defendant never testified on his own behalf. The defense presented the testimony of Mattie Clinton, an employee of the Salvation Army store and an acquaintance of defendant. Clinton testified that she never saw defendant in the store in January or February 1983. Lorene Woods testified that defendant's reputation in the community was of a nonviolent peacemaker. The defense also presented the testimony of Agent Grady of the Illinois State Police. Grady testified that, after Gary Kaya was arrested on a drug charge, Kaya stated that Green was wearing different clothes on January 10 than those in which he was found. Grady also stated that Kaya told him that Kaya was to receive $40,000 from the alleged drug sale to defendant, $17,000 of which was a debt already owed by Green to Kaya.

■■ ■ Viewing this evidence in a light most favorable to the prosecution, we conclude that defendant was not proven guilty beyond a reasonable doubt. The State has produced scant evidence to tie defendant to Green's murder. The State's case, in essence, revolves around three things: (1) that defendant had a motive to kill Green; (2) that none of the State's witnesses saw Green alive after he went to defendant's house; and (3) that defendant had a trunk at least similar to the trunk in which Green's body was found. None of these bases provides any real support for the State's case. First, the State argues that defendant "set up" Green to kill him and steal the drugs allegedly involved in the deal. The State points to the facts that defendant did not have $40,000, the alleged selling price of the drugs, in his bank account and that defendant did not want Kaya to accompany Green to his residence after the initial meeting. However, the jury acquitted defendant of the felony murder charge; it is apparent that the

jury did not subscribe to the State's theory of armed robbery and murder. Similarly, we find little to support this theory and refuse to find defendant guilty on a charge rejected by the jury. Second, the fact that the State's witnesses never saw Green again does not mean that no one saw Green after he went to defendant's house. Defendant testified that Green left the house and may or may not have been picked up by someone else. The fact that defendant's story as to exactly how Green left defendant's house has changed over the years is not, in our opinion, critical. The story was substantially the same each time it was told. While suspicious, these inconsistencies are minor when the evidence as a whole is viewed. (See *People v. Howard* (1979), 74 Ill. App. 3d 870, 878.) Additionally, a conviction must rest on the strength of the State's case, not the weakness of the defendant's case. (*Howard*, 74 Ill. App. 3d at 878.) The State has shown nothing other than that defendant had an opportunity to kill Green. However, an opportunity to commit a crime is not enough to sustain a conviction unless the State can show that no one else had the opportunity to commit the crime. (*People v. Jenkins* (1983), 117 Ill. App. 3d 33, 39.) Here, there was testimony that Green left defendant's house on January 10. Green's body was found approximately six weeks later, approximately 1½ miles from defendant's house. The opportunities for others to kill Green were numerous. The State simply did not prove that defendant took his opportunity to kill Green.

Furthermore, the State's evidence regarding the trunk is incomplete at best and confused at worst. No one was sure that the trunk in which Green was found was the same trunk he or she had seen either in defendant's house or his garage. Mary Carter testified that she saw defendant looking at a trunk in the Salvation Army store late in January 1983; however, Gary Kaya testified that he saw the trunk on January 8 in defendant's house, and Ronald Green said that he saw it on January 10 in defendant's garage. Carter did not know if defendant purchased the trunk. Ronald Green did not even mention the trunk to the police for five years. Finally, there was no evidence as to whether defendant still had a trunk in his house or his garage after January 10. This evidence, conflicting in some ways, absent in others, is simply too nebulous to provide a basis for a conviction. Defendant is to be accorded a basic presumption of innocence as the accused in a criminal case (see *Howard*, 74 Ill. App. 3d at 878); the jury has a duty to resolve all circumstances and facts on a theory of that innocence if that can reasonably be done. (*Jenkins*, 117 Ill. App. 3d at 39.) The State here has provided little more than speculation and conjecture as to how Eugene Green met his violent end; this is

not sufficient to overcome defendant's presumption of innocence. See *Howard*, 74 Ill. App. 3d at 878.

Accordingly, we reverse the judgment of the circuit court of Lake County.

Reversed.

DUNN and McLAREN, JJ., concur.