In re M. H., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. M. H., Respondent-Appellant.)

Fifth District   No. 79-477

Opinion filed June 10, 1980.

John H. Reid and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Martin N. Ashley and Christopher S. Carroll, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

M. H., a minor, appeals from his commitment to the juvenile division of the Department of Corrections by the Circuit Court of Madison County.

The minor was adjudged delinquent in September 1978. At a dispositional hearing on October 26, 1978, he was placed on probation for 18 months. In January 1979, in open court, he admitted the allegations of the State's petition to revoke probation. A second dispositional hearing was held on February 5, 1979, at which the court received and considered a social investigation report, pursuant to section 5—1(1) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 705—1(1)). The court committed appellant to the Department of Corrections but found that it was in the best interests of the minor and the public that the mittimus be stayed. The court's written order reflected the disposition of commitment "with stay of mittimus."

Thereafter, the State filed several motions to issue the mittimus, alleging various delinquent acts. On September 13, 1979, following a hearing before the court, the minor was adjudged delinquent in committing armed robbery by accountability. The court ordered that the stayed mittimus be issued and committed the minor to the Department of Corrections pursuant to the prior order of commitment, entered and stayed on February 5.

On appeal, appellant urges that the evidence was not sufficient to prove that he committed the armed robbery. He also claims that the court erred when it issued the mittimus and committed him to the Department of Corrections without an updated social investigation.

The evidence of the minor's participation in the armed robbery was entirely circumstantial. The victim, Estel Beasley, was 82 years old and had poor eyesight. He testified that on August 7, 1979, at about 5:30 p.m. he was operating a small roadside produce stand near his home when two black youths approached and asked to buy some tomatoes. The young men accompanied Beasley to his vegetable shed and attacked him while he was weighing and bagging the purchase. Beasley was stabbed three times in the side and once in the arm. He was shown two photographic arrays following the incident but did not identify the minor's photo in either one. He did, however, make a tentative identification during the

September dispositional hearing. When asked how he identified M. H., Beasley said, "I don't know. That fellow [the minor] looks like he might have been. I can't say for sure, but he looks like he might have been * * * I couldn't say for positive * * * But I think it's him, though, I think."

Additional testimony at the hearing revealed that on the afternoon of August 7, the minor, his companion, Wayne Smith, and his half-brother, Zonnie Collum, were at Collum's trailer in Collinsville, about a block and a half from Beasley's house. Collum's girlfriend testified that the three men left the trailer together at about 5:30 p.m. Collum testified that he went to a small nearby grocery market and that the minor and Smith continued on. Collum returned to the trailer alone and about 10 or 15 minutes later, the minor and Smith entered hurriedly together. Smith's shirt was covered with blood and a fishing knife was protruding from his front pants pocket. Both boys were perspiring and appeared out of breath. Smith announced that he had "knocked fire," meaning that he had robbed someone, and the minor announced that Smith had "cut some dude" three or four times. The two boys and Collum ran into a back bedroom where Smith took a wallet from his pocket, removed the money from it, and threw the billfold on a bed. Collum told Smith not to leave the wallet in the trailer and Smith threw it behind some bushes near the driveway. The billfold was recovered by police and identified by Beasley as the one the robbers had taken from him. After Collum, Smith and the minor emerged from the trailer's bedroom, the minor said to Collum's sister, "Let's go," and she drove them back to Alton, where the minor resided with his family.

The trial court found that there was no positive eyewitness identification of M. H. and relied instead on circumstantial evidence. The court noted that the minor and Smith were together when they left Collum and when they returned to the trailer with Beasley's wallet; that they were both out of breath and perspiring; that M. H. informed the others that Smith had stabbed somebody; and that the minor expressed no surprise or dissassociation from Smith's blood-covered shirt or Smith's announcement that he had robbed someone. The minor also helped arrange their escape to Alton.

■■ Accountability for an offense can be established through a person's knowledge and participation in a criminal scheme, even though there is no evidence of his direct participation in the criminal act. (*People v. Clark* (1963), 30 Ill. 2d 67, 195 N.E.2d 157; *People v. Rybka* (1959), 16 Ill. 2d 394, 405, 158 N.E.2d 17, 23.) In *People v. Greene* (1975), 27 N.E.2d 1080, 328 N.E.2d 176, a policeman was found shot to death. The defendant was arrested several blocks away driving an automobile containing the murder weapon and several passengers. Despite the absence of eyewitness identification or other evidence directly linking the defendant

to the shooting or to the weapon, the court found that the defendant's proximity to the weapon and the scene of the crime, and the logical inferences flowing therefrom, were sufficient to sustain an accountability conviction for murder. In the instant case, the minor's knowledge of the criminal act, his presence with Smith, and his assistance in leaving the scene indicated his participation in the criminal scheme. We agree with the trial court that the evidence supports his liability for armed robbery on an accountability theory by a preponderance of the evidence.

■■ We agree with the minor, however, that the trial court erred in issuing the mittimus without an updated social investigation. Section 5—1(1) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 705—1(1)) provides in pertinent part that "[n]o order of commitment to the Department of Corrections shall be entered against a minor before a written report of social investigation, *which has been completed within the previous 60 days*, is presented to and considered by the court." (Emphasis added.) Accompanying commentary indicates that "this section will have the effect of requiring such a [social investigation] report in all serious cases, and the juvenile court is encouraged to obtain a report in every case if possible."

The trial court candidly acknowledged that a stay of mittimus and its postponed issuance are "tools of judicial creation" and are not expressly authorized in the Juvenile Court Act or the Unified Code of Corrections. The parties argue at length about the legality of such procedures but we do not find it necessary to reach that issue, although our sister court has implicitly approved them as "an effort to aid in [a] defendant's rehabilitation." *People v. McGants* (1st Dist. 1974), 17 Ill. App. 3d 151, 308 N.E.2d 151 (abstract).

The minor conceded in his brief that the court conducted deliberate and circumspect proceedings before ordering issuance of the mittimus. Nonetheless, the social investigation report submitted at the February 5 dispositional hearing obviously was not completed within 60 days prior to the September hearing at which the minor was committed.

The State argues that inasmuch as there was a commitment order entered in February pursuant to a contemporaneous social investigation, the stay until September was a matter of judicial grace and carried with it no rights or requirements concerning another investigation. The language of the statute does not support this argument. Section 5—1(1) mandates that a social investigation be completed within 60 days prior to commitment. (*In re Stead* (1978), 59 Ill. App. 3d 1012, 376 N.E.2d 689; *In re Starks* (1978), 60 Ill. App. 3d 934, 377 N.E.2d 590.) The trial court's order issuing the mittimus and committing the minor to the Department of Corrections was an order of commitment within the meaning of section 5—1.

We have held that it was error for a trial court to commit a minor to the Department of Corrections without the statutorily required report. (*In re F. S.* (1979), 70 Ill. App. 3d 526, 388 N.E.2d 893.) A trial court must receive and consider a social investigation report that has been completed within the prior 60 days before it may commit a minor to the Department of Corrections, regardless of whether the commitment order is entered at the close of an initial dispositional hearing or entered following a stay of the initial commitment.

The judgment of the Circuit Court of Madison County finding that M. H. committed armed robbery by accountability is affirmed. The order of the Circuit Court committing the minor to the Department of Corrections is reversed, and this cause is remanded for consideration of a proper disposition after completion of a current written report of social investigation.

Affirmed in part; reversed in part; remanded.

SPOMER and WHITE, JJ., concur.