THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH BUNTING, Defendant-Appellant.

First District (1st Division)    No. 80-1644

Opinion filed February 1, 1982.

James J. Doherty, Public Defender, of Chicago (R. H. R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Raymond F. Brogan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, defendant Kenneth Bunting was found guilty of murder and robbery and sentenced to 28 years in the Illinois Department of Corrections. On appeal, defendant contends that (1) the State failed to prove his guilt beyond a reasonable doubt; (2) the jury was instructed incorrectly; and (3) prosecutorial misconduct denied him a fair trial.

We affirm.

Raymond Chester was shot on the morning of August 8, 1977, and died after he was taken by police to the hospital. The victim's wife Patricia Chester testified that prior to the incident, the victim had

answered a knock on their apartment door. Mrs. Chester remained in the bedroom and heard the victim and at least three other men talking loudly. Moments later, two gunshots were fired. Mrs. Chester crawled out the bedroom window and ran to the front of the apartment. She saw three men inside standing near her front door, but could not identify them because their backs were toward her. It appeared that the men were looking into a bedroom. Mrs. Chester then went to a neighbor's apartment and phoned police.

Mrs. Chester further testified that defendant had been to her apartment once before to purchase marijuana from her husband. She had seen defendant in the neighborhood on prior occasions and knew that his aunt lived next door.

The parties then stipulated to the testimony of T. J. McNulty and Dennis O'Neill. McNulty, a Chicago Police Department evidence technician, photographed the apartment and examined several items for fingerprints, including a cardboard box in the back bedroom. O'Neill, a fingerprint examiner for the police department, compared defendant's fingerprints with those found on the box and determined that the prints were identical.

Assistant State's Attorney Phillips testified that he spoke with defendant on August 14, 1977, after defendant's arrest. Defendant initially stated that Carl Garland had asked him to join in a robbery of the victim, but defendant refused. However, defendant followed Garland and two other men to the victim's apartment and fled when the shots were fired. When Phillips informed defendant that his fingerprint was found on a box in the apartment, defendant admitted entering the apartment to search for items to take.

Phillips further testified that defendant agreed to make a statement concerning the incident. The statement which was read into evidence indicated that defendant went with Garland and the other men to the victim's home. He stood among the men as Garland knocked on the door. When the victim answered, Garland demanded money and drugs. The victim reached for Garland's revolver, but Garland fired twice. Defendant entered the apartment and rifled through boxes and containers on a dresser in one of the bedrooms and took two watches. After defendant made this statement he read it, made changes, and signed it.

Defendant testified on his own behalf. He testified that when he was approached by Garland, he refused to participate in the robbery. When Garland left, defendant decided to go to his aunt's apartment which was located next to the victim's apartment. As he entered the building, he saw Garland shoot the victim. He was frightened and hid in a storage closet for approximately two minutes. Afterwards, he entered the apartment and took two watches from the bedroom.

First, defendant argues that the evidence was insufficient to prove his guilt under an accountability theory. He contends the evidence overwhelmingly shows that he refused to participate in the venture when asked by Garland. He further maintains that Assistant State's Attorney Phillips' questioning was vague and misleading and that therefore the statement he made did not reflect the truth.

■■ In order to prove guilt under the accountability statute, the State must establish that defendant, either before or during the commission of an offense and with the intent to promote or facilitate the commission of the offense, solicited, aided, abetted, agreed or attempted to aid another in the planning or commission of said offense. (*People v. Baynes* (1980), 87 Ill. App. 3d 1000, 410 N.E.2d 894; *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209.) Mere presence or negative acquiescence is ordinarily insufficient to establish accountability, but one may aid or abet without actively participating in the overt act. (*People v. Grice; People v. Crutcher* (1979), 72 Ill. App. 3d 239, 390 N.E.2d 571; *People v. Guiterrez* (1979), 71 Ill. App. 3d 895, 390 N.E.2d 438.) In deciding this issue, the trier of fact may consider defendant's presence at the crime (*People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150) and acts performed after the commission of the crime. *People v. Fuller* (1980), 91 Ill. App. 3d 922, 415 N.E.2d 502; *People v. Clifford* (1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.

■■ The evidence indicated that defendant accompanied Garland and the others to the victim's apartment after being told of the robbery plan. He stood among the other offenders as the victim answered the door, entered the apartment after the shooting, and took two watches. He did not attempt to stop the incident or aid the victim and did not phone the police. From these facts, the jury could properly conclude that defendant was accountable for Garland's acts.

■■ Many pertinent facts were obtained from defendant's statement to Phillips. After reviewing the statement, we do not agree with defendant that Phillips was deliberately vague or misleading. Twice, Phillips asked defendant if he went with the others to the apartment after being told of the robbery plan. Each time, defendant responded that he did. Other questions asked by Phillips were general and defendant was permitted to answer them any way he wished. He was permitted to add material at the end. He read the statement and made corrections before signing it. Thus, defendant was not forced to give misleading or incorrect answers in the statement.

Second, defendant contends that the jury was instructed improperly. Pertinent portions of the murder and robbery instructions are as follows:

"To sustain the charge of murder, the State must prove the following propositions:

FIRST: That the defendant, or one for whose conduct he is responsible, performed the acts which caused the death of Raymond Chester; and

SECOND: That when the defendant, or one for whose conduct he is responsible, did so,

he intended to kill or do great bodily harm to Raymond Chester, or

he knew that his act would cause death or great bodily harm to Raymond Chester, or

he knew that his acts created a strong probability of death or great bodily harm to Raymond Chester, or

he was attempting to commit or was committing the crime of robbery. * * *."

"To sustain the charge of robbery, the State must prove the following propositions:

FIRST: That the defendant, or one for whose conduct he is responsible, took property from the person or presence of Raymond Chester; and

SECOND: That the defendant, or one for whose conduct he is responsible, did so by the use of force or by threatening the imminent use of force. * * *."

The following accountability instruction was given:

"A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime."

Defendant maintains that the murder and robbery instructions should have included language from the accountability instruction regarding intent. He argues that the instructions given separately were misleading and unclear and that the jury should not have been compelled to consider them in conjunction with each other.

Initially, we note that defendant failed to tender alternate instructions during trial. Thus, the error was not properly preserved for review. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027; *People v. Carey* (1981), 94 Ill. App. 3d 631, 418 N.E.2d 1119; *People v. Anderson* (1981), 93 Ill. App. 3d 646, 417 N.E.2d 663.

Assuming the issue is properly before this court, we find that the jury was instructed correctly. As noted in *People v. Gaskins* (1980), 82 Ill. App. 3d 37, 402 N.E.2d 258, it is neither necessary nor possible for a single instruction to state all the law applicable to a case. Therefore, a jury is properly instructed if the instructions, considered as a whole, fully and

fairly define the applicable law. *Gaskins; People v. Williams* (1980), 80 Ill. App. 3d 963, 400 N.E.2d 532; *People v. Mitchell* (1979), 78 Ill. App. 3d 458, 397 N.E.2d 156.

■■ Here, the instructions, construed as a whole, are clear. Each issue instruction includes the phrase "that defendant or one for whose conduct he is responsible." This phrase is defined correctly in the accountability instruction. Contrary to defendant's contention, it is not necessary for the jury to interpolate to decide the elements of accountability. In *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367, the court found that separate murder and accountability instructions were unambiguous. The court further noted the instructions clearly provided that the intent to promote or facilitate a crime was a prerequisite to a finding of responsibility for another's crime. For the aforementioned reasons, we find that the trial court did not err in giving separate instructions.

■■ Third, defendant contends that various comments made by the prosecution during closing argument were improper and that he was thereby denied a fair trial. He first complains of the statements that defendant knew he would accompany Garland to the victim's apartment and that defendant's motive for doing so was to obtain money and drugs. Defendant maintains that there is no evidence in the record supporting these comments. Regarding the first comment, a brief review of the facts indicates that the comment was based on the evidence. We further find that the second comment was proper. During closing arguments, a prosecutor may draw legitimate inferences from facts and circumstances proved and motive is a proper subject of comment. (*People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899.) The facts in this case and the testimony of defendant show that the purpose for going to the victim's apartment was to rob the victim. Thus, the prosecutor's comment was not outside the bounds of permissible argument.

■■ Defendant further argues that the prosecutor inflamed the jury when, in explaining Mrs. Chester's failure to see defendant among the men near the apartment, he stated that defendant was inside "scavenging like a vulture over a dead body." Although a prosecutor may not make statements intended to inflame the jury, he may denounce defendant's wickedness, engage in some degree of invective, and draw inferences unfavorable to defendant if such inferences are based upon the evidence. (*People v. White* (1977), 48 Ill. App. 3d 907, 363 N.E.2d 408.) Here, the prosecutor's comment was not improper, particularly given defendant's testimony that he entered a bedroom and took two watches. A legitimate inference from this fact is that defendant was not within Mrs. Chester's view as she looked into the apartment. We do not believe that the simile used by the prosecutor in drawing this inference was so inflammatory that it constituted error.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.