THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN LEE DOTSON, *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 81—1080, 81—1116 cons.

Opinion filed April 10, 1986.—Rehearing denied May 6, 1986.

JOHNSON, J., specially concurring.

James J. Doherty, Public Defender, of Chicago (Alison J. Norwood, Assistant Public Defender, of counsel), for appellant Melvin Lee Dotson.

Steven Clark, of State Appellate Defender's Office, of Chicago (Mary A. Martin, of counsel), for appellant Karlton Von Lee.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Kevin Sweeney, and Charles J. Thut, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant Karlton Von Lee (Von Lee) was convicted of attempted armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 8—4), aggravated battery based upon great bodily harm (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)), aggravated battery based upon the use of a deadly weapon (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)), and armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 *et seq.*, 12—4(b)(1)), and sentenced to five years' imprisonment for the attempted robbery conviction. Von Lee's codefendant Melvin Lee Dotson (Dotson) was convicted of attempted murder (Ill. Rev. Stat. 1979, ch. 38, par. 8—4) in addition to the offenses stated above, and was sentenced to concurrent terms of eight years' incarceration for attempted murder and five years' imprisonment for attempted armed robbery. Both defendants appeal from their convictions, raising the following questions for our review:

1. Whether Von Lee was properly found guilty beyond a reasonable doubt based upon the theory of accountability for the conduct of Dotson;

2. Whether Von Lee's trial counsel was incompetent, thereby depriving him of effective assistance of counsel, because his trial attorney allegedly failed to argue that Von Lee's prior conviction of robbery was inadmissible under the standard set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695;

3. Whether the prosecution denied Von Lee a fair trial on the ground that the assistant State's Attorney improperly commented in closing argument on Von Lee's post-arrest silence;

4. Whether the trial court committed reversible error in denying Von Lee's motion for a mistrial based upon the delay caused by the trial judge's illness;

5. Whether Dotson was denied a fair trial on the ground that the prosecution systematically sought to exclude blacks from the jury.

We affirm the convictions of both defendants.

BACKGROUND

Defendants, both black males in their early twenties, were convicted for the shooting and attempted robbery of Lawrence Smith (Smith), a white male in his middle fifties, at approximately 4:40 a.m. on June 25, 1980, while Smith was waiting for a Chicago Transit Authority bus at the corner of Damen and Grand Avenues in Chicago.

Smith testified at trial that on the day in question, he was waiting for a bus in order to go to his place of employment at a factory where he worked the morning shift (7 a.m. to 3:30 p.m.). As he was waiting for the bus, two black males, later identified as Dotson and Von Lee, approached the stop. The two men approached Smith and stood on either side of him, roughly one foot away from him. Smith moved 10 to 15 feet away from them. The two men then spoke to each other, although Smith did not hear the substance of the conversation. One of the men asked Smith for a cigarette, but Smith responded that he did not have any. Von Lee then went across the street to a young white male who was standing on that side of the street. Dotson remained to the side of Smith. Von Lee spoke to the man on the other side of the street briefly and then returned to the side on which Smith and Dotson were standing. Dotson produced a gun, pointed it at Smith, and announced that this was "a stick-up." Dotson was roughly six inches to a foot away from Smith. Smith told Dotson he "did not have anything" and began to turn to move away. Smith saw the gun, began turning, and heard the gun discharge. He was shot once in the back hip pocket. Smith identified a .38-caliber, nickel-plated revolver introduced into evidence at trial as the weapon Dotson had displayed in announcing the robbery on June 25.

Smith described one of his assailants as approximately 5 feet 6 inches tall, 150 pounds, black of medium complexion, in his early twenties, and wearing a dark sweater and pants. He had no facial hair and had a scar on the right side of his face. Smith identified Dotson in court as that individual. Smith described the other assailant as approximately 6 feet tall, 160 pounds, black with a dark complexion, in his early twenties, and wearing a dark shirt and light pants. He had no facial hair. Smith identified Von Lee as this other individual.

Smith testified that, following the shooting, he ran to a marked police car stopped on Damen Avenue south of Grand. There were two uniformed Chicago police department officers in the car. Smith informed them that he had just been "shot and robbed." He got into the police car and gave the officers a description of Von Lee and Dotson and the location of the incident. The officers broadcast the information over the radio.

Smith stated that the group drove east on Grand Avenue from Damen about one block. They then went two blocks south of Grand, and encountered squad cars, police officers, and the two defendants. Smith identified them at that time as his assailants. Smith was then transported by the two officers to St. Mary's Hospital, where he was treated and released. Smith testified that the bullet has never been removed.

Officer Holec of the Chicago police department, who was one of the officers in the car to which Smith ran on the morning of the incident, testified at the trial. He testified that at approximately 5 a.m. on June 25, he and his partner were in a marked police car at the corner of Ferdinand and Damen at the traffic stop. The officers were approached by a young white male, and then by Smith. Smith told the officers he had just been shot and robbed, got into the car, and gave the location of the incident and a description of the two perpetrators. Holec simulcasted over the radio the nature and location of the incident and the description of the assailants to other police vehicles in the area. Officer Holec and the others then proceeded in the police car to Grand and Damen. Upon receipt of a transmission from the radio dispatcher, the officers proceeded to Kinzie and Damen, which was roughly two blocks from the scene of the crime. Roughly three to four minutes had transpired since Smith's arrival at the police car. When Holec and the others arrived at Kinzie and Damen, they saw one unmarked police car, two investigators of the Chicago police department, and two men in police custody. Smith got out of the car, took a few steps to where the investigators had apprehended two men, and identified the two men in custody as the individuals who had shot and robbed him. Officer Holec identified the defendants in court as the two individuals arrested at Kinzie and Damen and identified there by Smith on June 25. He testified that he and his partner then took Smith to St. Mary's Hospital for treatment.

Detective Nielson of the Chicago police department testified that in the early morning hours of June 25 he was working with his partner in the city of Chicago. Both were in street clothes, in an unmarked police car parked on Damen between Hubbard and Kinzie, conducting surveillance in an unrelated matter. At roughly 5 a.m., they received a radio broadcast regarding a robbery. They then noticed two men who matched the description given in the radio broadcast. The two men were running westbound on Kinzie. They were running alongside each other, and ran in the sight of the officers for roughly three-quarters of a block. Detective Nielson was in the driver's seat of the car. He pulled the vehicle up in front of the two men, into the intersection of Kinzie and Damen. Detective Nielson identified the two defendants in court as

the individuals he had seen running on Kinzie.

Detective Nielson testified that when he pulled the car up in front of the defendants, he and his partner got out of the vehicle, informed the two men that they were police officers, and told them to stop. Dotson was stopped on the driver's side of the vehicle, toward the rear of the car. Nielson saw that Dotson had his right hand behind him and that Dotson threw a gun toward the rear of and underneath the vehicle. Nielson arrested Dotson and recovered the weapon three to four feet away from Dotson. He testified that the gun was a .38-caliber revolver with a nickel plated finish. Nielson further stated that he examined the weapon and noticed that one round of ammunition had been expended and one had a dented primer as though someone had attempted to fire it but it had not discharged. Nielson identified the gun at trial as the one he had recovered on June 25. It was the same weapon previously identified by Smith.

Detective Nielson testified that on the morning of June 25, Dotson was wearing a brown shirt and black pants and that he had a scar on the right side of his face. He stated that Von Lee was wearing a black shirt and grey pants. Nielson testified that his partner, Detective Manno, arrested Von Lee approximately 15 to 20 feet away from the car. He also stated that when Smith arrived at the scene he pointed out both defendants and said they were the individuals who shot him. Detective Manno's testimony was substantially similar to that of Detective Nielson.

Von Lee testified that at roughly 3:45 a.m. on the morning of June 25, he left his home on the southwest side of Chicago to go to his former employer's to see if he could do some day work for them. He stated that his employer was located in the northwestern vicinity of the city of Chicago. Von Lee stated that he walked to Ashland, caught a bus at 43rd Street and transferred to the elevated platform. He took the Englewood elevated to the Howard line going north. Von Lee testified that he intended to get off the train at State and Lake but fell asleep. He awoke later and got off the elevated at Damen. He then started walking south on Damen Avenue and stopped to wait at the bus stop at Grand and Damen. Von Lee testified that he was travelling alone during the entire period of time.

Von Lee stated that when he arrived at the stop, a white man, whom he identified in court as Smith, was at the stop. He stated that an older black man with a cane was also there. Von Lee testified that he walked past and in front of both of these men and stood at the stop near the curb of the street. When a white man came across Grand, Von Lee stepped into the street. Shortly thereafter Von Lee

heard a shot and saw a flash out of the corner of his eye. He ran away because he was frightened. He ran south on Damen, by himself. He encountered the officers at Kinzie and Damen, and was stopped and arrested. Von Lee stated that when he tried to speak to the officers, they told him to keep his hands on the car.

Von Lee testified at trial that in 1977 he pleaded guilty to aggravated battery. He also testified that he never spoke to Smith while he was at the stop and denied any involvement in the incident. On cross-examination he stated that when he arrived at the bus stop there were both a black and a white man on the other side of the street. He further stated that the black man came across to the side of the street where he was standing, and that thereafter the white man also came across the street. Von Lee stated that he stepped into the street when this second individual crossed Grand Avenue to the side of the street on which he was standing. Von Lee identified the black man who crossed the street as Dotson in court. Von Lee stated that on June 25, he was wearing a black shirt and grey slacks.

Investigator Skrzypek of the Chicago police department testified for the State in rebuttal. He stated that there is no Howard elevated train stop at Grand and Damen. He testified that there is a stop at Grand and State, and that the map of the Howard elevated line at the State/Grand stop indicates that the Howard elevated line never intersects with Damen Avenue. The officer stated that State and Grand is approximately 3½ miles from Damen and Grand.

OPINION

I

Von Lee argues that the evidence produced at trial was insufficient to find him guilty beyond a reasonable doubt of the offenses charged based upon the theory of his accountability for the conduct of Dotson.

■■ A person is legally accountable for the actions of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) Thus, "where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids ***." (*People v. Kessler* (1974), 57 Ill. 2d 493, 497, 315 N.E.2d 29, *cert. denied* (1974), 419 U.S. 1054, 42 L. Ed. 2d 650, 95 S. Ct. 635; see also *People v. Terry* (1984), 99 Ill. 2d 508, 513-15, 460

N.E.2d 746.) Furthermore, such accountability "can be established through a person's knowledge and participation in a criminal scheme, even though there is no evidence of his direct participation in the criminal act." (*In re M.H.* (1980), 85 Ill. App. 3d 385, 387, 406 N.E.2d 873; see also *People v. Rogers* (1984), 122 Ill. App. 3d 384, 392, 461 N.E.2d 511, *appeal denied* (1984), 101 Ill. 2d 574.) Since "[a]ctive participation has never been a requirement for the imposition of criminal guilt upon the theory of accountability" (*People v. Ruiz* (1982), 94 Ill. 2d 245, 254, 447 N.E.2d, 148, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465; see also *People v. Gray* (1980), 87 Ill. App. 3d 142, 147, 408 N.E.2d 1150, *appeal denied* (1980), 81 Ill. 2d 604, *cert. denied* (1981), 450 U.S. 1032, 68 L. Ed. 2d 228, 101 S. Ct. 1745), a defendant may be held to aid and abet another in the commission of a crime without physically participating in the overt act (*People v. Young* (1983), 116 Ill. App. 3d 984, 994, 452 N.E.2d 718, *appeal denied* (1983), 96 Ill. 2d 565), and proof of accountability may be shown in the form of entirely circumstantial evidence. *People v. Morgan* (1977), 67 Ill. 2d 1, 9, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411; *People v. Tate* (1976), 63 Ill. 2d 105, 109, 345 N.E.2d 480.

■ In determining whether accountability has been established, the trier of fact may consider factors such as the defendant's presence during the crime, acts performed after commission of the crime, and the offender's flight from the scene. (*People v. Washington* (1984) 127 Ill. App. 3d 365, 374, 468 N.E.2d 1285, *appeal denied* (1985), 102 Ill. 2d 559; *People v. Schlig* (1983), 120 Ill. App. 3d 561, 570-71, 458 N.E.2d 544; *People v. Bunting* (1982), 104 Ill. App. 3d 291, 294, 432 N.E.2d 950.) Where a conviction is based upon circumstantial evidence, the facts produced must not only be consistent with the defendant's guilt and produce a reasonable and moral certainty thereof (*People v. Williams* (1982), 93 Ill. 2d 309, 322, 444 N.E.2d 136, *cert. denied* (1984), 467 U.S. 1218, 81 L. Ed. 2d 371, 104 S. Ct. 2666), but must be inconsistent with any reasonable hypotheses of the defendant's innocence. (*People v. Jones* (1985), 105 Ill. 2d 342, 350, 475 N.E.2d 832; *People v. Jenkins* (1983), 117 Ill. App. 3d 33, 39, 452 N.E.2d 867.) Upon review, a jury's verdict will be reversed where the evidence is so unsatisfactory or improbable that a reasonable doubt remains as to the defendant's guilt. *People v. Bradford* (1985), 106 Ill. 2d 492, 502, 478 N.E.2d 1341.

■ The record here indicates that the victim testified that both Von Lee and Dotson arrived at the bus stop together, that they stood on either side of him, and that they spoke to each other when he

moved away from them. The record further establishes that Von Lee stood by while Dotson announced to the victim that "this is a stick-up" and then shot the victim, that Von Lee and Dotson both fled the scene by running down the same street in the same direction, and that they were apprehended a few minutes later, still running in the same direction on a different street from that on which the crime occurred. Based upon this evidence, we cannot say that the jury's verdict that Von Lee aided Dotson in the commission of the offenses of attempted armed robbery and aggravated battery was palpably erroneous because of a reasonable and well-founded doubt of Von Lee's guilt.

Moreover, based upon this record, we are unable to conclude that the evidence produced was consistent with a reasonable hypotheses of the defendant's innocence. Von Lee testified that he was taking the Howard elevated train to the north side of the city in order to speak to his former employer, that he overslept and missed the stop at which he had wanted to get off the train, and that he woke up and got off at Damen Avenue instead. He stated that he was at the corner of Grand and Damen, trying to catch a bus, when he heard a shot, became frightened, and ran away. Rebuttal testimony established, however, that there is no Damen Avenue stop on the Howard elevated line and that the Howard line stop nearest to the scene of the crime is 3.5 miles away. Accordingly we cannot say that the evidence produced at trial was consistent with defendant's innocent bystander defense.

## II

Von Lee also contends that his convictions should be reversed because he was denied effective assistance of counsel. He claims that his trial attorney failed to file a motion *in limine* to exclude the State's introduction into evidence of Von Lee's prior conviction of robbery.

■ A defendant is entitled to a new trial because of ineffective assistance of counsel where his counsel's representation fell below an objective standard of reasonableness and where, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Gaines* (1984), 105 Ill. 2d 79, 93, 473 N.E.2d 868, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Von Lee claims here that his trial attorney was incompetent when he failed to argue that Von Lee's prior conviction should be excluded from evidence pursuant to *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, in that the conviction's probative value was out-

weighed by its prejudicial effect.

The record indicates that prior to trial, the court held a hearing wherein defendant's trial counsel argued that admission of defendant's prior conviction be limited to the State's rebuttal case and that the State be permitted to offer proof only that defendant had been convicted of a forcible felony. In ruling upon this motion, the trial court gave full and detailed consideration to the admissibility of the conviction under the *Montgomery* rule. In fact the court treated defense counsel's argument as a motion to exclude the conviction all together, and stated in conclusion that this motion was denied. Thus, the trial court considered and applied the very standard upon which defendant now contends his trial attorney's arguments should have been based. In view of this record, we cannot say that Von Lee was substantially prejudiced by the substance of his attorney's claim with regard to the admissibility of Von Lee's prior conviction.

### III

Von Lee asserts that he is entitled to a new trial because the prosecutor made improper statements in closing argument which deprived him of a fair trial. Specifically, Von Lee contends that the prosecutor improperly commented upon Von Lee's post-arrest silence.

The record establishes the following statements were made during the prosecution's closing argument to the jury:

"STATE'S ATTORNEY: Now ladies and gentlemen, the defense lawyer even asked the defendant Von Lee did you tell the police about this, what would a reasonable man do, he would immediately tell the police what happened when they stopped him. No, he never told the police—

DEFENSE ATTORNEY: Objection to that. That is unfair commenting on the facts. The individual said he tried to tell the police. Now Your Honor, if indeed I am incorrect then his failure to say anything is not fair comment. There will be a motion on that, Your Honor.

THE COURT: Motion denied. The jury heard the evidence and they will pass on it."

The record also shows that during Von Lee's direct examination at trial, his counsel asked whether Von Lee attempted to talk to the arresting officer. Von Lee responded that he had attempted to do so, but that the officer "told [him] to keep [his] hands on the car"; when Von Lee attempted to speak again, the arresting officer "slapped" him. The arresting officer testified at the trial, but was not questioned during direct or cross-examination regarding whether Von Lee

attempted to speak when he was arrested, nor was he called as a witness in rebuttal by the State for this or any other purpose.

The prosecutor's comment in closing argument here regarding Von Lee's "post-arrest silence" was clearly improper. There was no evidence presented at trial that Von Lee did remain silent following his arrest. Consequently the prosecution's remarks were patently in error; "counsel are never justified in arguing facts not of record." *(United States v. Fearns* (7th Cir. 1974), 501 F. 2d 486, 489; see also *People v. Emerson* (1983), 97 Ill. 2d 487, 497, 455 N.E.2d 41.) Furthermore such error was even more flagrant here, since the "fact" of Von Lee's "post-arrest silence" to which the prosecution referred would have been clearly inadmissible either as direct evidence or as impeachment of Von Lee's testimony at trial. See *People v. Szabo* (1983), 94 Ill. 2d 327, 359-60, 447 N.E.2d 193; *People v. Green* (1979), 74 Ill. 2d 444, 449-50, 386 N.E.2d 272.

Nevertheless we further conclude that the error of the prosecutor's comment in closing argument did not substantially prejudice Von Lee such that he should be entitled to a new trial. A defendant is given a new trial where it is established that the improper remarks were such a material factor in the conviction that the jury would have reached a contrary verdict had the improper comments not been made. *(People v. Robinson* (1984), 125 Ill. App. 3d 1077, 1082, 467 N.E.2d 291, *appeal denied* (1984), 101 Ill. 2d 574.) As stated more fully above, in the instant cause there was substantial evidence upon which the jury relied in order to find Von Lee guilty of the offenses charged. There was also considerable evidence which rebutted Von Lee's innocent bystander defense. As a result we cannot conclude that the prosecution's improper remarks in closing argument constituted reversible error.

## IV

■ Von Lee argues that the trial court committed reversible error when it denied his motion for a mistrial based upon a delay caused by the trial judge's illness.

The record establishes that the jury trial of Von Lee and Dotson began on Wednesday, March 4, 1981. On the following day, Thursday, the prosecution completed its case in chief, the defense presented its case, and defense rested. The trial court continued the case until the following day, Friday. On that day, the parties and the jury were informed by a substitute judge that the trial judge was ill and the matter was continued to Monday, March 9. On Monday, the trial judge was still ill and hospitalized; as a result the case was continued and a

ruling on Von Lee's motion for a mistrial reserved until the trial judge's return. The trial judge resumed his duties on Wednesday, March 11. On that day the trial court denied Von Lee's motion for a mistrial, the State presented evidence in rebuttal, closing arguments were made, jury instructions given, and jury deliberations had. In effect, the judge's illness caused a delay of four working days.

The power to grant a mistrial in a criminal prosecution should be used with the greatest caution, under urgent circumstances and for very plain and obvious causes (*People v. Nurse* (1985), 131 Ill. App. 3d 590, 595, 475 N.E.2d 1000, *appeal denied* (1985), 106 Ill. 2d 558), and only when the ends of substantial justice cannot be obtained without discontinuing trial. (*People v. Howard* (1984), 121 Ill. App. 3d 938, 943, 460 N.E.2d 432.) A decision to deny a mistrial rests within the sound discretion of the trial court (*People v. Watson* (1982), 103 Ill. App. 3d 992, 999, 431 N.E.2d 1350), and its determination will be reversed where it appears that the jury has been so influenced and prejudiced that it would not, or could not, be fair and impartial. (*People v. Robinson* (1984), 121 Ill. App. 3d 1003, 1014-15, 460 N.E.2d 392.) In view of the considerations that the case at bar was not factually complicated, that closing arguments were given by all parties following the delay, and that Von Lee has failed to demonstrate any actual prejudice caused by the delay, we cannot say that the trial court's denial of the mistrial motion was an abuse of discretion which would entitle Von Lee to a new trial. See *People v. Campbell* (1984), 126 Ill. App. 3d 1028, 1036-37, 467 N.E.2d 1112, *appeal denied* (1984), 101 Ill. 2d 569, *cert. denied* (1985), 471 U.S. 1136, 86 L. Ed. 2d 695, 105 S. Ct. 2677.

## V

■ Dotson argues that he is entitled to a new trial because the prosecution systematically excluded blacks from the jury through the use of peremptory challenges.

The sixth amendment to the United States Constitution guarantees that an "accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." (U.S. Const., amend. VI.) Nevertheless it is equally well settled that a prosecutor's use of peremptory challenges to eliminate black individuals from a jury raises no violation of the sixth amendment. (*Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837; *People v. Payne* (1983), 99 Ill. 2d 135, 137-39, 457 N.E.2d 1202, *cert. denied* (1984), 465 U.S. 1036, 83 L. Ed. 2d 372, 105 S. Ct. 447.) Instead only a systematic and

purposeful exclusion of blacks from juries on a case-after-case basis raises such a constitutional question. (*People v. Lyles* (1985), 106 Ill. 2d 373, 392-93, 478 N.E.2d 291, *cert. denied* (1985), 474 U.S. ___, 88 L. Ed. 2d 141, 106 S. Ct. 171.) Furthermore the burden of producing some evidence to establish such systematic exclusion rests with the defendant. (*People v. Davis* (1983), 95 Ill. 2d 1, 16, 447 N.E.2d 353, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507.) As a court of intermediate review, we are obligated to adhere to such precedent. See *People v. Nurse* (1985), 131 Ill. App. 3d 590, 593-94, 475 N.E.2d 1000.

We recognize that defendant's claim in the case at bar raises serious questions which go to the heart of the integrity of the criminal justice system in this State, and our abhorrence of the practice of systematically and purposefully excluding blacks from juries solely on the basis of race cannot be overemphasized. To paraphrase the United States Supreme Court in its recent decision in *Vasquez v. Hillery* (1986), 474 U.S. ___, ___, 88 L. Ed. 2d 598, 608, 106 S. Ct. 617, 623: "[I]ntentional discrimination in the selection of *** jurors is a grave constitutional trespass, possible under the color of state authority, and wholly within the power of the State to prevent."

From this perspective, and upon careful and close scrutiny of the record in the instant cause, we are constrained to conclude that Dotson has failed to present evidence of discrimination which, under Illinois Supreme Court precedent, would permit reversal and remandment here. The record shows that defense counsel excused the court reporter after four prospective jurors were examined during *voir dire*. The only additional matter in the record which refers to the racial composition of the jury and the State's use of peremptory challenges are the arguments and pleadings of the parties. Both the oral motion for a mistrial made by Dotson as well as his written post-trial motion asserted that the State peremptorily excused eight black venire members, all over defense objection. In response to Dotson's allegations, the prosecution argued before the trial court that there were in fact black jurors on the panel as well as a black alternate juror. In its oral pronouncements wherein the trial court denied Dotson's oral motion for a mistrial, the trial court noted that two of the venire excused by the State were black and that both of these challenges were justified for reasons wholly unrelated to the race of those individuals.

Based upon this record, we are simply unable to conclude that Dotson's sixth amendment right to trial by an impartial jury was violated by the prosecution on the ground that the State used its pe-

remptory challenges to systematically exclude blacks from the jury. The record here is woefully lacking of the essential and operative evidence required in order to support the conclusion which Dotson suggests.

Dotson further asserts that this court should reverse his convictions and remand for a new trial on the premise that "[t]he burden should shift to the prosecution after a defense motion stating that peremptory challenges were used to exclude blacks." We are constrained to decline to adopt such a position, however, as it is directly contrary to controlling Illinois Supreme Court precedent to which we are obligated to adhere. See *People v. Lyles* (1985), 106 Ill. 2d 373, 392-96, 478 N.E.2d 291, *cert. denied* (1985), 474 U.S. ___, 88 L. Ed. 2d 141, 106 S. Ct. 171; *People v. Gaines* (1984), 105 Ill. 2d 79, 88-89, 473 N.E.2d 868, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666; *People v. Payne* (1983), 99 Ill. 2d 135, 137-39, 457 N.E.2d 1202, *cert. denied* (1984), 465 U.S. 1036, 83 L. Ed. 2d 372, 105 S. Ct. 447; *People v. Williams* (1983), 97 Ill. 2d 252, 273-80, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.

In closing, we express our recognition that Dotson's argument presents legal questions analogous to those raised in *Batson v. Kentucky* (Ky. Dec. 20, 1984), No. 84—SC—733—MR (unpublished), *cert. granted* (April 22, 1985), 471 U.S. 1052, 85 L. Ed. 2d 476, 105 S. Ct. 2111, and in *McCray v. Abrams* (2d Cir. 1984), 750 F.2d 1113, *rehearing en banc denied* (1985), 756 F.2d 277, *cert. pending* (March 19, 1985), No. 84—1426 (53 U.S.L.W. 3671). (See also *McCray v. Abrams* (1985), 471 U.S. 1097, 85 L. Ed. 2d 837, 105 S. Ct. 2318 (motion to expedite consideration of petition for writ of *certiorari* and to consolidate with *Batson* denied).) Both *Batson* and *McCray*, however, contained facts of record which might be interpreted to establish a *prima facie* showing that the State's exercise of peremptory challenges of certain potential jurors was founded "solely on the basis of their racial [or ethnic] affiliation." (See *McCray v. Abrams* (2d Cir. 1984), 750 F.2d 1113, 1131-33; *Batson v. Kentucky*, No. 84—6263, Petition for Writ of *Certiorari*, February 19, 1985.) The record in the instant cause, in contrast, is devoid of any facts to establish even a *prima facie* showing that the State exercised peremptory challenges to exclude members of the venire solely because of their group affiliation. As a result, even adopting *arguendo* the standard advanced by Dotson here and enunciated by *McCray v. Abrams*, the deficiency of factual support in the case at bar would preclude us from concluding that Dotson is entitled to the relief he

requests. *Cf. United States v. Campbell* (1st Cir. 1985), 766 F.2d 26, 27-28.

For the reasons stated, the judgments of the trial court are affirmed.

Affirmed.

LINN, P.J., concurs.

JUSTICE JOHNSON, specially concurring:

I agree with the majority's disposition of the cause and, therefore, concur in the result. However, I cannot join my colleagues because, once again, they rely on *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and its Illinois offspring. I continue to assign error to the rule of *Swain.* I also continue to believe that *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, and its progeny express the better view. *People v. Loggins* (1985), 134 Ill. App. 3d 684, 694, 480 N.E.2d 1293, 1301 (Johnson, J., concurring); *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 671, 430 N.E.2d 243, 248 (Johnson, J., dissenting).

In *Swain v. Alabama,* the United States Supreme Court held that a prosecutor's misuse of peremptory challenges to exclude black persons from a jury in a criminal trial solely on account of their race did not deny a defendant equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution. The court held, however, that a defendant would prevail on such a claim if he could demonstrate that a prosecutor in a county was systematically excluding persons from juries for racially motivated reasons "in case after case." (*Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) The Illinois Supreme Court has repeatedly declared the principles articulated in *Swain* to be controlling in Illinois. *People v. Lyles* (1985), 106 Ill. 2d 373, 392-95, 478 N.E.2d 291, 298-300; *People v. Payne* (1983), 99 Ill. 2d 135, 138-39, 457 N.E.2d 1202, 1204; *People v. Williams* (1983), 97 Ill. 2d 252, 273-80, 454 N.E.2d 220, 229-33.

Scholars, attorneys, and the general public have criticized the rule of *Swain* because it (1) defeats the goal of a fair jury that the sixth amendment to the United States Constitution expresses, (2) contains a standard that is unfair to defendants and is almost unattainable, and (3) destroys the appearance of justice in our courtrooms. *People v. Loggins* (1985), 134 Ill. App. 3d 684, 696-98, 480 N.E.2d 1293, 1302-04 (Johnson, J., concurring).

*People v. Wheeler* expresses the better view. There, the Supreme Court of California held that a prosecutors misuse of peremptory challenges to exclude blacks from juries violated a defendant's right to an impartial jury drawn from a fair cross-section of the community, guaranteed by the California Constitution. *People v. Wheeler* (1978), 22 Cal. 3d 258, 276-77, 583 P.2d 748, 761-62, 148 Cal. Rptr. 890, 903; see also *Commonwealth v. Soares* (1979), 377 Mass. 461, 387 N.E.2d 499; *State v. Crespin* (1980), 94 N.M. 486, 612 P.2d 716.

The third division of this court concurred with the *Wheeler*-type standard in *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, relying on the impartial jury guarantee of the sixth amendment to the United States Constitution. The third division held that when it reasonably appeared to a trial court that the State was using its peremptory challenges solely to exclude black jurors because of their race the burden shifted to the State to demonstrate that the exclusions were for reasons other than race. (106 Ill. App. 3d 1034, 1040, 436 N.E.2d 1046, 1050.) Relying on its previous decisions, the Illinois Supreme Court rejected this approach and reaffirmed its allegiance to *Swain*. (*People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.) Two United States Courts of Appeals have adopted the *Wheeler* approach, *Booker v. Jabe* (6th Cir. 1985), 775 F.2d 762, and *McCray v. Abrams* (2d Cir. 1984), 750 F.2d 1113.

As the majority noted, the United States Supreme Court recently granted *certiorari* to review and heard argument on the question of whether it is a violation of the sixth amendment to the United States Constitution for the State to use its peremptory challenges to systematically exclude blacks from the jury in a case solely because of their race. *Batson v. Kentucky* (1985), 471 U.S. 1052, 85 L. Ed. 2d 476, 105 S. Ct. 2111.

The majority also correctly notes that we may not overrule or modify decisions of our supreme court. (*Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863, 867; *People v. Nurse* (1985), 131 Ill. App. 3d 590, 594, 475 N.E.2d 1000, 1004.) Thus, until a higher court resolves this issue, defendants should preserve adequate records of their *voir dires* so that, someday, a reviewing court may hold that a particular defendant has met the "case after case" standard of *Swain*. Even under the *Wheeler* approach, a defendant still must preserve a record showing a *prima facie* case that a prosecutor has excluded persons from the jury solely on account of their race. (*People v. Wheeler* (1978), 22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905; *People v. Gaines* (1981), 88 Ill. 2d 342, 359, 430 N.E.2d 1046, 1054.) I agree with the

majority that the defendant before us did not fulfill this requirement.

From August 1985 to the present, at least 10 additional defendants have contended that prosecutors in this State misused their peremptory challenges to exclude blacks from their juries:

> *People v. Amos* (1985), 140 Ill. App. 3d 14, 488 N.E.2d 290; *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015; *People v. Richardson* (1985), 139 Ill. App. 3d 598, 487 N.E.2d 716; *People v. Thomas* (1985), 139 Ill. App. 3d 163, 486 N.E.2d 1362; *People v. Smith* (1985), 139 Ill. App. 3d 21, 486 N.E.2d 1347; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292; *People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 483 N.E.2d 944; *People v. Green* (1985), 136 Ill. App. 3d 361, 483 N.E.2d 606; *People v. Walker* (1985), 136 Ill. App. 3d 177, 483 N.E.2d 301; *People v. Williams* (1985), 136 Ill. App. 3d 126, 483 N.E.2d 306.

The number of defendants raising this claim is large and ever-increasing. *People v. Frazier* (1984), 127 Ill. App. 3d 151, 156-57, 469 N.E.2d 594, 598-99 (listing 46 cases).

I share the majority's abhorrence of this practice, which a justice of our supreme court described as "unconstitutional, unAmerican and unconscionable." (*People v. Alford* (1984), 101 Ill. 2d 568, 579-80 (appeal denied, Simon, J., dissenting).) Insofar as the majority correctly applied the present law of Illinois to the facts of this case, I concur in the result.