165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ricky IRBY, Petitioner-Appellant,
v.
George DE TELLA, Warden, Respondent-Appellee.
 No. 97-1797.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 6, 1998.*
Decided Nov. 9, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 5410. George M. Marovich, Judge.
 Before Hon. THOMAS E. FAIRCHILD, Hon. WILLIAM J. BAUER, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Ricky Irby appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The district court issued a certificate of appealability with respect to the following issues: whether sufficient evidence supported Irby's conviction for murder; and whether his due process rights were violated by his conviction despite the state's loss or destruction of physical evidence. We affirm the denial of the habeas petition.
 
 
 2
 In 1984, paramedics responded to a call placed by Sheila Smith, Irby's girlfriend and the mother of his two children: Ricky, age three; and Quinten, age three months. Upon arriving at Smith's apartment, the paramedics found chemical burns around Quinten's mouth, chin, and neck. At the hospital, Quinten was treated for external and internal burns caused by his ingestion of a strong acid or chemical. Given the toxic nature of the injury-causing substance, the treating physician surmised that someone had forced the acid or chemical down Quinten's throat. When questioned by police regarding his son's injuries, Irby answered that he believed Quinten's injuries were caused by tainted baby formula and that Abbott Labs, the parent company of the maker of Quinten's formula, should pay. Quinten lingered at a children's hospital for twenty-seven months before dying of his injuries in 1986. In 1987, Irby filed a wrongful death lawsuit against Ross Laboratories, a subsidiary of Abbott Laboratories, that he later dismissed voluntarily.
 
 
 3
 In 1989, Smith and Irby were charged with Quinten's murder on the theory that Irby aided Smith in poisoning Quinten in order to obtain a financial settlement from Ross Laboratories by fraudulently blaming it for the death of their son. Smith pleaded guilty to murder in April of 1990, but Irby pleaded not guilty and his case proceeded to trial.
 
 
 4
 Irby's trial was hampered by the state's loss of physical evidence collected from Irby and Smith and given to the state for testing in the fall of 1984. Among the lost evidence were items collected from Smith's apartment, including an open can of baby formula, a formula-filled baby bottle, and sink traps, as well as a piece of fabric from Irby's father's car and a piece of Irby's pants, both of which sustained burns and stains as a result of coming into contact with acid or acid-laced baby formula. Despite the absence of the evidence, experts were able to testify at trial regarding tests that had been performed on the evidence prior to its loss; for instance, a toxicologist testified that the open can of baby formula recovered from Smith's apartment was found to contain an extremely acidic substance. Other expert testimony indicated that acid was added to the can of formula after it was opened.
 
 
 5
 Christopher Lageotakes, Irby's cellmate in August of 1989, testified that Irby admitted that he had paid someone to "lose" the evidence in his case and that he had devised a plan with Smith whereby they would taint Quinten's formula and then sue Ross/Abbott Labs for Quinten's injuries. According to Lageotakes, Irby confessed that he obtained acid from a friend, went to Smith's residence, and then replaced either an untainted can of formula or baby bottle with a tainted one. During cross-examination, Lageotakes admitted that he had asked for a transfer to a different prison in exchange for his testimony but maintained that his offer had been refused. Although there is evidence in the record indicating that Lageotakes was in fact transferred to another correctional facility sometime after Irby's trial, the transfer was not linked to Irby's case.
 
 
 6
 After a bench trial, the Illinois Circuit Court convicted Irby of murder on the basis of accountability and sentenced him to 80 years' imprisonment. See People v. Irby, 237 Ill.App.3d 38, 177 Ill.Dec. 177, 602 N.E.2d 1349 (Ill.App.Ct.1992), appeal denied, 148 Ill.2d 648, 183 Ill.Dec. 26, 610 N.E.2d 1270 (Ill.1993). Irby appealed to the Illinois Appellate Court alleging many of the same issues currently before this court. The appellate court affirmed Irby's conviction, and the Illinois Supreme Court denied his petition for leave to appeal. On September 21, 1995, Irby filed his § 2254 petition with the District Court for the Northern District of Illinois, Eastern Division. Applying the new standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), the district court denied the petition but granted Irby a certificate of appealability. However, as made clear by the Supreme Court's ruling in Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997), the district court should have applied the law in effect prior to the AEDPA because the statute applies only to habeas petitions filed after April 24, 1996. Our analysis is not hampered by this improper application of the AEDPA, however, because "we can still review the district court's denial of the petition using the standards applicable before the AEDPA took effect to see if the district court's decision was proper." Aliwoli v. Gilmore, 127 F.3d 632, 633 (7 th Cir.1997).[1]
 
 
 7
 Irby first argues that his murder conviction violates due process because there is insufficient evidence to sustain it. This argument requires us to examine the trial court's evidence pursuant to the pre-AEDPA standard of whether any rational trier of fact, in this case the trial judge, could have found Irby guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Biskup v. McCaughtry, 20 F.3d 245, 247 (7 th Cir.1994). State court findings of fact are presumed correct and are reviewed deferentially. 28 U.S.C. § 2254(e)(1) (formerly § 2254(d)); Neumann v. Jordan, 84 F.3d 985, 987 (7 th Cir.1996). A state appellate court's findings of fact are entitled to the same presumption of correctness as those made by a state trial court. Williams v. Parke, 133 F.3d 971, 973 (7 th Cir.1997).
 
 
 8
 Reviewing the record in a light most favorable to the prosecution, we conclude that the state court rationally could have found Irby guilty of murder on the basis of accountability beyond a reasonable doubt. Jackson, 443 U.S. at 319. Under Illinois law, a defendant may be held accountable for the actions of another even where there is no evidence of direct participation. People v. Dotson, 143 Ill.App.3d 135, 97 Ill.Dec. 244, 492 N.E.2d 903, 907 (Ill.App.Ct.1986). In this case, trial court heard direct evidence indicating that Irby knew of, and participated in, Quinten's murder, specifically, Lageotakes' testimony that Irby admitted aiding Smith in lacing Quinten's formula with acid. The trial court found this testimony worthy of credence notwithstanding Lageotakes' felon status and impeachment testimony concerning Lageotakes' efforts to extract a transfer in exchange for his testimony. We presume this determination to be correct, and Irby has not provided us with any reason to believe otherwise. See § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").
 
 
 9
 The trial court also considered circumstantial evidence of Irby's guilt. It found unbelievable Irby's own testimony regarding his innocence, as well as that of cellmate Robert Medlock, whom Lageotakes said also was present when Irby confessed his involvement with the crime. Although Medlock did not testify, the parties stipulated that, if called, Medlock would have denied that any conversation took place between Irby and Lageotakes. It also noted that Irby sought to establish paternity over Quinten only after he was injured--a fact supporting the reasonable inference that Irby sought paternity only to file suit against Ross/Abbott Labs and that the lawsuit was Irby's motivation in harming Quinten. Moreover, although the trial court stated that it was uncertain how or when the acid entered Smith's household, it credited testimony suggesting that Irby tainted the open can of formula. For instance, one of the investigating officers stated that he searched Smith's home for harmful agents accessible to a young child (under the theory that perhaps Quinten's three-year old brother poisoned the formula) but found nothing. And other witnesses testified regarding Irby's preoccupation with suing Ross/Abbott Labs, including a nurse who recalled hearing Irby speak of suing Abbott Labs even before he had been told the nature of Quinten's injuries. Again, we will not disturb the trial judge's credibility assessments, which, taken together, support Irby's murder conviction.
 
 
 10
 Next, Irby contends that his due process rights were violated when he was convicted in the absence of the physical evidence given to the state for testing, including the open can of baby formula, a baby bottle filled with formula, sink traps, and fabric swatches. Had this evidence been preserved, Irby maintains, he would have been able to show or suggest his own innocence. We find no merit to this argument. The appellate court analyzed this claim pursuant to both Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and California v. Trombetta, 467 U.S. 479, 488-90, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and found that Irby failed to demonstrate a due process violation stemming from the loss of evidence because he failed to show either bad faith on the part of the government, as required by Youngblood, or, as required by Trombetta, that the lost evidence had exculpatory value that was apparent before the evidence was destroyed and that the evidence was of such a nature that Irby would be unable to obtain comparable evidence by other reasonably available means. See also Jones v. McCaughtry, 965 F.2d 473, 477 (7 th Cir.1992). Among other things, the appellate court noted that Irby had an opportunity to cross-examine the state toxicology experts concerning tests performed on the can of formula before its disappearance; that Irby presented two experts, neither of whom criticized or impeached the tests used by the state's experts to determine the presence and amount of acid in the can of formula; and that the testing methods performed on the formula were not shown to be incorrect. Moreover, Irby conceded in his state court appellate brief that the loss of evidence was caused by negligence and that nothing in the record suggested that the state knew the evidence had any exculpatory value when it was lost. The district court also heard testimony from Lageotakes suggesting that Irby paid someone to lose the evidence. In light of the court's findings, Irby's concession, and Lageotakes' testimony, we find no merit to Irby's due process claim. To the extent Irby raises new arguments before this court regarding evidence of bad faith, including allegations that the trial judge went fishing with one of the state toxicologists, Irby waived these issues by his failure to present them to the appellate court on direct review and his subsequent inability to overcome this default by establishing cause for the default and prejudice resulting from the default. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Aliwoli, 127 F.3d at 634.
 
 
 11
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 Because Irby filed his habeas petition before April 24, 1996, the district court should have issued him a certificate of probable cause instead of certificate of appealability. However, since AEDPA does not apply to Irby's petition, we simply treat the certificate of appealability as a certificate of probable cause. See Koo v. McBride, 124 F.3d 869, 872 (7th Cir.1997)